Receipt # 062987

ORIGINAL

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUN 7 2005
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SCOTT TIMBER CO., | ) |
| Plaintiff, | ) |
| v. | ) No. 05- 604C |
| THE UNITED STATES, | ) |
| Defendant. | ) |

**COMPLAINT**

**COUNT I**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609.

2. The Appellant-Contractor is Scott Timber Co. ("Scott").

3. Defendant is the United States of America acting through the United States Forest Service, Department of Agriculture (the "Forest Service").

4. This action arises out of the Forest Service's denial of Scott's claim under the Contract Disputes Act, 41 U.S.C. § 601 et. seq. (the "CDA"), for breach of the Forest Service's Backwoods Thin timber sale contract, Contract No. 075870.

5. On November 9, 2004, Scott submitted a properly certified claim letter to the Contracting Officer pursuant to the CDA, seeking damages and requesting a final decision within 60 days.

6. On May 23, 2005, the Contracting Officer, Robert W. Williams, issued a final decision granting in part and denying in part Scott's claims associated with the Backwoods Thin timber sale.

7. The Backwoods Thin timber sale involves the sale and harvest of certain timber located in the Siskiyou National Forest in Oregon.

8. The Forest Service awarded the Backwoods Thin timber sale contract to Scott on September 30, 1998.

9. Scott was relying on the timber from the Backwoods Thin sale to meet its obligations to supply wood to the mills owned and operated by its parent company and long-standing exclusive domestic log processing subcontractor, Roseburg Forest Products ("RFP").

10. Scott relies on RFP to fulfill the domestic processing requirement of its Forest Service timber sale contracts and RFP relies on Scott to supply timber to its mills.

11. Scott began harvesting the Backwoods Thin sale in 1999, removing a total of approximately 1,141 thousand board feet (mbf) from the sale.

12. At all times relevant to this case, the Forest Service was obligated to ensure that its actions, including its sale of the Backwoods Thin contract, did not violate the ESA, 16 U.S.C. § 1536, which provides that:

> Each Federal agency shall . . . insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species. . . .

13. Pursuant to the National Forest Management Act, 16 U.S.C. § 472 et. seq., the Forest Service was required to comply with the "Northwest Forest Plan," the Aquatic Conservation Strategy ("ACS"), and the Land Management Plan for the Siskiyou National Forest with respect to all of its actions concerning the Backwoods Thin timber sale.

14. The Northwest Forest Plan was adopted by the Secretaries of Agriculture and Interior to address a variety of environmental issues within the range of the Northern spotted owl in the Pacific Northwest following the listing of that species under the ESA. The ACS was a component of the Northwest Forest Plan. The Northwest Forest Plan in 1994 amended the Land Management Plans of a number of National Forests, including the forest plan on the Siskiyou National Forest which governed the Backwoods Thin sale, such that those forest plans then included, among other things, the ACS.

15. In Pacific Coast Federation of Fishermen's Association v. National Marine Fisheries Service, No. 97-CV-775, 1998 WL 1988556 (W.D. Wash. 1998) ("PCFFA I"), a coalition of environmental groups challenged the sufficiency of certain Biological Opinions that had been

issued by NMFS following consultation between NMFS and the Forest Service concerning the effects of Forest Service timber sales on certain aquatic species listed under the ESA.

16. The Forest Service was a named defendant in PCFFA I.[1]

17. In the Biological Opinions challenged in PCFFA I, NMFS had determined that if the Forest Service complied with the ACS, both at the broad landscape level of planning and when implementing site-specific agency actions such as timber sales, the Forest Service's actions would not violate the ESA by jeopardizing the continued existence of the listed species and, therefore, in NMFS's opinion, could proceed.

18. In PCFFA I, the District Court, Judge Rothstein, held that if the Forest Service's timber sales complied with the ACS, then those sales would not violate the ESA. However, the Court found that the Biological Opinions were nevertheless invalid because the Opinions issued by NMFS, working in tandem with the Forest Service and relying on Forest Service Biological Assessments, failed to demonstrate that the individual timber sales were in compliance with the ACS. Accordingly, NMFS, and by necessary implication, the Forest Service, had not established that the timber sales at issue in PCFFA I complied with the ACS or the ESA.

---

[1]The Bureau of Land Management ("BLM") was also a named defendant in PCFFA I and its timber sales and management plans were similarly subject to the ACS. However, the BLM's timber sales and management plans are not at issue in this action.

19. In Pacific Coast Federation of Fishermen's Association v. NMFS, 71 F. Supp.2d 1063 (W.D. Wash., No. C99-67R, 1999) ("PCFFA II"), the same six plaintiffs from the PCFFA I case challenged additional Biological Opinions issued by NMFS as being inconsistent with ACS.

20. In PCFFA II, the plaintiffs argued that the biological opinions at issue were inadequate for the same reason that the ones at issue in PCFFA I were inadequate, i.e., the Biological Opinions did not adequately ensure or verify that the Forest Service or BLM had complied or would comply with ACS on these projects. On September 30, 1999, Judge Rothstein granted the plaintiffs' motion for summary judgment in PCFFA II.

21. While the appeal of PCFFA II was pending at the Ninth Circuit, the same six plaintiffs filed Pacific Coast Federation of Fishermen's Association v. NMFS, Case No. C00-1757R ("PCFFA III"), challenging NMFS for failing to ascertain ACS's compliance with respect to 20 additional biological opinions on the same grounds raised in PCFFA II covering approximately 170 timber sales, including the Backwoods Thin sale.

22. On December 7, 2000, Judge Rothstein granted the plaintiffs' motion for preliminary injunction in PCFFA III, finding that the plaintiffs had a strong likelihood of success on the merits, because the 20 biological opinions at issue in PCFFA III had been issued under the same consultation procedures used in PCFFA II, which the court had already determined were arbitrary and capricious because those procedures failed to ensure or verify agency compliance with ACS.

23. In accordance with the preliminary injunction in PCFFA III, NMFS suspended the 20 biological opinions at issue, including the biological opinion that covered the Backwoods Thin timber sale.

24. On or about December 14, 2000, the Forest Service advised Scott that the Biological Opinion supporting the Backwoods Thin sale was no longer in effect and that Scott's operations on the Backwoods Thin sale were suspended.

25. Following the Ninth Circuit's decision affirming the lower court's decision in PCFFA II, see Pacific Coast Federation of Fishermen's Association v. NMFS, 265 F.3d 1028 (9th Cir. 2001), NMFS permanently withdrew the 20 biological opinions at issue, including the Biological Opinion that covered the Backwoods Thin timber sale. The Backwoods Thin sale remained suspended by the Forest Service.

26. The Forest Service's suspension of the Backwoods Thin sale remained in effect from December 14, 2000 until May 12, 2003.[2]

27. Prior to award of the Backwoods Thin timber sale to Scott, the Forest Service knew or should have known that the Backwoods Thin timber sale was not in compliance with the ACS and that neither the Forest Service's Biological Assessment nor the NMFS's Biological Opinion

---

[2]The suspension on the Backwoods Thin sale was temporarily lifted by letter dated October 2, 2001, immediately following the decision in Alsea Valley Alliance v. Evans, 161 F. Supp.2d 1154 (D. Or. 2001). This decision set aside NMFS's listing of the Oregon Coast coho salmon, obviating the need for a biological opinion on the sale. The sale was suspended again by letter dated January 17, 2002.

issued for the Backwoods Thin sale prior to award demonstrated that operation of the Backwoods thin sale would be in compliance with the ESA or the ACS. By awarding the Backwoods Thin timber sale and then subsequently suspending that sale in order to determine whether that sale complied with the ACS and the ESA, the Forest Service materially breached the Backwoods Thin timber sale contract.

28. Because the Forest Service failed to design the Backwoods Thin sale to ensure compliance with the ACS and the ESA, the Biological Opinion issued by NMFS did not and could not demonstrate that the Backwoods Thin sale complied with ACS and ESA requirements. The Forest Service therefore caused the suspension of the Backwoods Thin sale and materially breached the contract.

29. Because the Forest Service failed to do the environmental analysis required in order to demonstrate that the Backwoods Thin sale was consistent with the ACS and the ESA, the Biological Opinion covering the Backwoods Thin sale was deemed invalid as a result of PCFFA II & III, and the Backwoods Thin sale had to be suspended by the Forest Service. Thus, the Forest Service's failure to satisfy its obligation to ensure that the sale was consistent with the ACS and the ESA caused the suspension of the Backwoods Thin sale and materially breached the contract.

30. Because the Forest Service worked in tandem with NMFS in developing the Biological Opinions that failed to demonstrate that the Backwoods Thin sale complied with the ACS and the ESA, the Forest Service, as well as NMFS, was responsible for the invalidation of the

Biological Opinions and the subsequent suspension of the Backwoods Thin sale. Accordingly, the Forest Service materially breached the contract.

31. Prior to the award of the Backwoods thin timber sale to Scott, the Forest Service knew or should have known that the NMFS's Biological Opinions and its own Biological Assessments were invalid and that no reasonable determination had been made that the operation of the Backwoods Thin timber sale would be in compliance with the ACS or the ESA. By awarding the Backwoods Thin timber sale and then subsequently suspending that sale in order to perform environmental analyses which should have been performed prior to award, the Forest Service materially breached the Backwoods Thin timber sale contract.

32. Due to the Forest Service's material breaches of the Backwoods Thin timber sale contract, Scott was deprived of access to the Backwoods Thin sale timber and has incurred damages in the total amount of $357,477.

**COUNT II**

33. Scott incorporates and re-alleges herein paragraphs 1-32 of this complaint.

34. Additionally and in the alternative, pursuant to clause CT6.25 (1/93) of the Backwoods Thin timber sale contract, the Forest Service warranted that, prior to award, it had investigated the sale area and, on the basis of its instructions and the Forest Service's knowledge at the time, had included in the contract, identified on the sale area map, and otherwise identified on the ground all measures adequate to protect the habitat of threatened, endangered, and sensitive

species. Although clause C6.25 of the Backwoods Thin timber sale contract indicated that Scott had to schedule its timber harvesting operations in certain areas to minimize the disturbance to Northern spotted owls and to minimize the spread of Phytophthora Lateralis, this clause did not identify any other areas requiring measures to protect threatened, endangered or sensitive species, and no such areas were identified to Scott on the sale area map, elsewhere in the contract, or on the ground prior to the award of the contract. Scott relied on the Forest Service's warranty in clause CT6.25 (1/93) when it bid on the Backwoods Thin sale and accepted the award.

35. Notwithstanding the Forest Service's warranty in clause CT6.25 (1/93) of the Backwoods Thin timber sale contract, at the time of award, the Forest Service had no valid basis for warranting that all measures adequate to protect the habitat of threatened, endangered, and sensitive species had been included in the contract and identified to Scott.

36. Because prior to awarding the Backwoods Thin timber sale contract, the Forest Service had not completed all necessary environmental analyses or properly consulted with NMFS as contemplated by clause CT6.25 (1/93), the Forest Service was required to suspend the Backwoods Thin timber sale in order to accomplish these tasks.

37. Prior to the award of the Backwoods Thin timber sale contract, the Forest Service knew or should have known that it did not have a valid basis for its warranty under CT6.25 (1/93) of the Backwoods Thin timber sale contract, and therefore the Forest Service's subsequent

suspension of that contract in order to perform the required environmental analyses and consultation constituted a material breach of the contract.

38. The Forest Service's breach of its warranty under CT6.25 (1/93) of the Backwoods Thin timber sale contract and the suspension of the contract which resulted from that material beach caused Scott to incur damages in the amount of $357,477.

**COUNT III**

39. Scott incorporates and re-alleges herein paragraphs 1-32 above.

40. The Forest Service's suspension of the Backwoods Thin timber sale contract was imposed on or about December 14, 2000 and was in place for over two years, i.e., until May 12, 2003, with the exception of a lifting of the suspension outside the normal operating season on October 2, 2001, only to be followed by a reinstatement of the suspension on January 17, 2002.

41. The ostensible purpose of the suspension was to permit the Forest Service time to consult with NMFS concerning whether the Backwoods Thin timber sale contract complied with the ACS and would not jeopardize the listed aquatic species. The length of the time involved in the suspension for this purpose was unreasonable in duration, and the Forest Service failed to undertake reasonable efforts to complete the required consultation within a reasonable timeframe.

42. Accordingly, in the alternative to Counts I and II, the unreasonable duration of the Forest Service's suspension of the Backwoods Thin timber sale contract constitutes a further material breach of that contract and resulted in Scott incurring damages in the amount of $357,477.

**COUNT IV**

43. Scott incorporates and re-alleges herein paragraphs 1-32 above.

44. Additionally and in the alternative to Counts I, II and III, the Forest Service materially breached the Backwoods Thin timber sale contract by failing to compensate Scott as required by clause CT6.01 for unamortized road costs and out-of-pocket costs paid to financial institutions. These costs total $83,418 and are continuing.

WHEREFORE, plaintiff respectfully requests that this Court:

(a) rule that the Forest Service breached the Backwoods Thin timber sale contract by wrongfully suspending the Backwoods Thin timber sale;

(b) overturn the Contracting Officer's deemed denial of plaintiff's claim;

(c) award plaintiff all the damages it has suffered as a result of the Forest Service's wrongful suspension of the Backwoods Thin timber sale, plus applicable interest in accordance with the Contract Disputes Act;

(d) in the alternative, award Scott all the compensation due to it under contract clause C6.01;

(e) award plaintiff its costs and attorneys' fees incurred in pursuing this action; and

(f) grant plaintiff such further relief as this Court deems just and proper.

Respectfully submitted,

Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Alan I. Saltman
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: June 7, 2005