IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SCOTT TIMBER CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-604C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO TRANSFER AND SUGGESTION FOR CONSOLIDATION

Pursuant to Rule 7.2(a) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits its opposition to plaintiff Scott Timber Company's ("Scott Timber's") motion to transfer and consolidate this case, No. 05-604C, with Swanson Group, Inc. v. United States, No. 05-170C, and Swanson Group Inc.. v. United States, No. 05-171C, which are currently pending before Senior Judge Smith. We oppose plaintiff's motion for the reasons discussed below.

ARGUMENT

Scott Timber filed its complaint in this case on June 7, 2005. On July 15, 2005, Scott Timber filed a motion to transfer and consolidate this case, number 05-604C ("Backwoods Thin sale"), with case numbers 05-170C, Swanson Group, Inc. v. United States ("Benchmark sale") and 05-171C, Swanson Group, Inc. v. United States ("Whitecap sale"). The complaints in the Swanson Group cases were filed on January 26, 2005. Prior to filing its motion to transfer and consolidate, Scott Timber filed a notice of indirectly related cases in these Swanson Group cases, pursuant to RCFC 40.2(b). Because this case does not share common issues of law and fact sufficient to justify transfer and consolidation, we oppose this motion.

I. Standard of Review

Motions to consolidate are governed by RCFC 42, which provides in part:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

The Court has broad discretion to determine whether consolidation is appropriate. Boston Edison Co. v. United States, -- Fed. Cl. -- , 2005 WL 1793410 at *2 (July 29, 2005) (quoting Cienega Gardens v. United States, 62 Fed. Cl. 28, 32 (2004)). "In determining whether consolidation is appropriate, the Court must weigh the risks of prejudice and possible confusion against 'the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.'" Boston Edison, -- Fed. Cl. -- , 2005 WL 1793410 at *2 (quoting Cienega, 62 Fed. Cl. at 31); see also Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990); Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982); Manhattan Constr. Co. v. United States,--- Fed. Cl. ---, 2005 WL 1654877, at *1 (July 14, 2005); Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993). The appropriateness of consolidating claims depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation. Karuk Tribe, 27 Fed. Cl. at 433 (citing Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987)). A party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions. In re Repetitive Stress Injury

Litigation v. Nat'l Semiconductor Corp. et. al, 11 F.3d 368, 373 (2d Cir.) (citing MacAlister v. Guterma, 263 F.2d 65, 70 (2d Cir.1958)).

II. This Case Does Not Share Overlapping Issues Of Fact And Law Sufficient To Justify Transfer And Consolidation With The Swanson Group Cases

In its motion, Scott Timber asserts that "[t]ransferring the instant case to Judge Smith for consolidation with the Swanson Group cases or for coordination of a common discovery and pretrial schedule will greatly promote judicial efficiency and ensure consistent application of the law because of the substantial overlap in common issues of fact and law among all three cases." Pl's Mot. at 2. We disagree that these cases share overlapping issues of fact and law such that transfer and consolidation is appropriate. See Swanson Group, Inc. v. United States, No. 05-179C (Fed. Cl. June 13, 2005) (order denying motion to transfer and consolidate).

A. The PCFFA Litigation Affected Scott Timber's Backwoods Thin Sale Differently Than Swanson Group's Benchmark And Whitecap Sales

In its motion, Scott Timber asserts, as one ground for consolidation, that all three cases involve timber sale contracts with the United States Forest Service ("USFS" or "Forest Service") that are alleged to have been wrongly suspended as a result of several Federal district court rulings, Pacific Coast Federation of Fishermen's Association v. National Marine Fisheries Service ("NMFS"), W.D. Wash. Case No. 97-CV-775, 1998 WL 1988556 (PCFFA I"), Pacific Coast Federation of Fishermen's Association v. NMFS, 71 F. Supp. 2d 1063 (W.D. Wash. 1999) ("PCFFA II"), Pacific Coast Federation of Fishermen's Association v. NMFS, W.D. Wash. Case No. C00-1757R (Dec. 7, 2000) ("PCFFA III"), and a Ninth Circuit decision in Pacific Coast Federation of Fishermen's Association v. NMFS, 265 F.3d 1028 (9th Cir. 2001) ("PCFFA II appeal"**)**. Pl's Mot. at 2. The PCCFA cases involved a coalition of environmental groups

challenging the sufficiency of certain biological opinions that had been issued by NMFS following consultation between NMFS and the Forest Service concerning the effects of Forest Service timber sales on certain aquatic species listed under the Environmental Species Act ("ESA") and the Aquatic Conservation Strategy ("ACS"). Pl's Compl. at ¶¶ 15, 20, 21. While defendant does not disagree that each of the sales at issue in these cases was suspended as a result of the PCFFA litigation, there are several important differences in PCFFA's relationship to the Benchmark and Whitecap sales at issue in the Swanson Group cases, and its relationship to the Backwoods Thin sale at issue here.

For instance, the Benchmark and Whitecap contracts were suspended as a direct result of the PCFFA litigation, Compl. 05-170C at ¶18 and Compl. 05-171C at ¶30, whereas the Backwoods Thin sale contract was suspended as an indirect result of PCFFA III. Exhibit 1, Contracting Officer's Decision, dated May 23, 2005, at ¶2.b (stating "[t]his sale was considered to be covered by the [PCFFA II] decision . . . as the Biological Opinion was nearly identical to the Biological Opinions listed in PCFFAII."). PCFFA plaintiffs directly challenged, and the Federal courts found invalid, the NMFS's specific biological opinions that affected the Benchmark sale, Compl. 05-170C at ¶18, and the Whitecap sale, Compl. 05-171C at ¶30. The Backwoods Thin biological opinion was not specifically identified and challenged in any of the PCFFA litigation, Exhibit 1 at ¶2.b. Accordingly, the Benchmark and Whitecap sales were suspended pursuant to contract subsection C6.01(b), which provides that the "purchaser agrees to interrupt or delay operations under this contract . . . upon the written request of the Contracting Officer . . . to comply with a court order, issued by a court of competent jurisdiction," whereas the Backwoods Thin sale was suspended pursuant to contract subsection C6.01(c), which

provided that the purchaser would agree to interrupt or delay operations "[u]pon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale are the same as, or nearly the same as, conditions existing on sale(s) named in such an order as described in (b)." Exhibit 2. Thus, while it can be said that the PCFFA litigation had some affect on all three sales, the biological opinions covering the Benchmark and Whitecap sales were directly involved in the PCFFA litigation, whereas the biological opinion covering Scott's Backwoods Thin sale was not. As a result, the sales were suspended pursuant to different contract subsections and the resulting legal analysis will necessarily differ.

Further, in making its determination as to whether the Backwoods Thin sale was in accordance with the PCFFA decisions and whether the suspension could be lifted, the Forest Service relied upon the existing NMFS biological opinion, which, unlike the biological opinions affecting the Benchmark and Whitecap sales, was not one of the biological opinions named in PCFFA litigation. Ex. 1 at ¶2.b. Additionally, the Forest Service had previously made (before the PCFFA litigation) a "No Affect" determination in its biological assessment supporting the Backwoods Thin sale, meaning the Forest Service determined that the Backwoods Thin sale would have no adverse affect on any protected species. Following the NMFS's withdrawal of the biological opinions named in the PCFFA litigation, of which the biological opinion addressing the Backwoods Thin sale was not a part, the Forest Service reaffirmed its previous "No Affect" determination in it s supporting biological assessment. Ex. 1. at ¶2.j (stating "[t]he Forest Service did review the existing Biological Opinion and found it consistent with the court ruling."). As a result, the Forest Service determined it was able to move forward with the sale, without having to submit the biological opinion to the NMFS for approval. The contrary is true

with the Benchmark and Whitecap sales, both of which had to be submitted to the NMFS for review. Thus, the Forest Service employed a different process for analyzing the Backwoods Thin sale than it employed for the Benchmark and Whitecap sales. The results of these analyses determined if and when the Forest Service could lift the suspensions, thus determining the length of the suspensions, and ultimately, the reasonableness of the suspensions. Accordingly, because these processes differ, the factual and legal issues involved necessarily differ.

B. The "Common Legal Issues" Cited By Scott Timber In Its Motion Do Not Justify Transfer And Consolidation

Scott Timber also asserts that each of the three cases include common legal issues. Yet, these legal issues either require consideration of specific, differing facts or they have previously been considered by this Court and the United States Court of Appeals for the Federal Circuit, and thus, present no high risk of obtaining vastly inconsistent adjudications.

The first legal issue presented by Scott Timber is whether the Forest Service breached its implied duties to cooperate and not to hinder the contractor's performance. Scott Timber alleges in its complaint that the Forest Service materially breached the contract when it "award[ed the] Backwoods Thin timber sale and then subsequently suspend[ed] that sale in order to determine whether that sale complied with the ACS and the ESA;" issued a biological opinion that could not demonstrate that the Backwoods Thin sale complied with the ACS and ESA requirements; failed to "satisfy its obligation to ensure that the sale was consistent with the ACS and the ESA;" worked in tandem with NMFS to develop the biological opinions that did not meet the requirements of the ACS or ESA; and awarded the Backwoods Thin timber sale and then subsequently suspended the sale in order to perform environmental analyses which should have been performed prior to the award. Pl's Compl. at ¶¶27-31. Thus, plaintiff's basic argument is

that the Forest Service breached the contract by failing to comply with statutory environmental requirements, which later caused the Forest Service to suspend timber contracts.

Both this Court and the Federal Circuit have previously found that the Government's failure to comply with statutory environmental requirements may qualify as a breach, but only if the Court concluded after consideration of other relevant facts that the Forest Service did not act reasonably in carrying out its obligations**.** Scott Timber Company v. United States, 333 F.3d 1358 (Fed. Cir. 2003); H.N Wood Products v. Unites Stated, 59 Fed. Cl. 479 (2003). Thus, the question of whether the Forest Service "acted reasonably" is a necessary part of the Court's analysis in determining whether the failure to comply with statutory requirements prior to soliciting bids constitutes a breach. In order to make such a determination, the Court must consider relevant facts, which as discussed below, differ greatly between these cases.

Moreover, plaintiff's allegations do not create a novel legal issue in the sense that both this Court and the Federal Circuit have examined similar questions of law. Scott Timber, 333 F.3d 1358; H.N. Wood, 59 Fed. Cl. 479 ; Scott Timber v. United States, 40 Fed. Cl. 492, 499 (1988). The same is true of plaintiff's second legal issue listed in its motion, whether the Forest Service breached certain alleged express warranties under the contracts arising under standard clause C6.25 or standard clause CT6.25. See Scott Timber, 333 F.3d at 1370-71; Scott Timber v. United States, 44 Fed. Cl. 170, 175-81 (1999). As the Federal Circuit found, even if contract clause 6.25 could be found to create an express warranty, Scott Timber could not reasonably rely upon the language as creating a warranty. Scott Timber, 333 F.3d at 1371.

Plaintiff's third legal issue listed in its motion is whether the Forest Service breached the timber sale contract by suspending the contract for an unreasonable amount of time. It is true

that in addition to determining whether the Forest Service had the authority to suspend the sales pursuant to contract language, the Court must consider whether the suspension itself and the duration of the suspension was reasonable. Scott Timber, 333 F.3d at 1368-1370. The answer to these questions, however, requires the analysis of the individual circumstances surrounding each sale. Id. ("Although violations of statutory obligations not incorporated into the contract cannot constitute, by themselves, a breach of contract, this court finds that the requirements under the ESA can be considered as a factor in the analysis of whether the suspensions were reasonable, which is a question of fact."). In the case of Scott's Backwoods Thin sale contract versus Swanson Group's Benchmark and Whitecap sale contracts, those surrounding circumstances greatly differ.

At a most basic level, Scott Timber's Backwoods Thin sale took place in the Siskiyou National Forest, whereas the Benchmark and Whitecap sales both took place in the Umpqua National Forest. Consequently, a different contracting officer was assigned to the Backwoods Thin sale contract than was assigned to the Benchmark and Whitecap sale contracts. Certainly an inquiry into each contracting officer's decision to suspend the individual sales is key. Additionally, the Benchmark and Whitecap contracting officer did not issue a contracting officer's final decision, whereas the Backwoods Thin contracting officer did issue a final decision. Exhibit 1.

Moreover, as discussed above, each of these three sales and their suspensions were affected differently by the PCFFA litigation, we well as additional litigation. Scott Timber alleges that the suspension on Backwoods Thin sale was temporarily lifted for almost four months as a result of the decision in Alsea Valley Alliance v. Evans, 161 F. Supp. 2d 1154 (D.

Or. 2001), which set aside NMFS's listing of the Oregon Coast coho salmon, obviating the need for a biological opinion on the sale. Pl's Compl. at 6 n.2. The Benchmark and Whitecap suspensions, however, were lifted for 16 days as a result of the same litigation. The Backwoods Thin suspension ultimately lasted all of two years. The Benchmark suspension was in place for almost 6 years and the Whitecap suspension was over three years.

Thus, the factual circumstances that emerged after the initial suspensions are critical in analyzing and determining whether the Forest Service acted reasonably in its suspension and whether the period of suspension was reasonable. These subsequent actions in the Backwoods Thin sale differ from those in the Whitecap and Benchmark sales and require a separate factual inquiry. A-1 Cigarette Vending Inc. v. United States, 40 Fed. Cl. 643, 644 (1998) (holding that the necessity of conducting plaintiff-specific findings in both the liability and damages phases of a regulatory takings claim rendered inappropriate the large, multi-party case contemplated by the plaintiffs). Similarly, Scott Timber's proof of its damages, should that become necessary, will require factual development and legal analysis specific to it and this particular timber sale. Id.

C. This Case Involves Different Witnesses And Documents

Finally, plaintiff asserts that many of the same witnesses and documents are involved in all three cases. Pl's Mot. at 3. Presently, this seems unlikely. As mentioned above, we have Backwoods Thin sale had a different contracting officer (two, actually) than the Benchmark and Whitecap sales, and an inquiry as to their basis of suspension, as well as their decision to maintain and eventually lift the suspension, is key. There are two national forests involved (Umpqua and Rogue-Siskiyou) and consequently, different forest management team members involved. Additionally, there are specialists with the NMFS who had a part in the final

biological opinions affecting these sales as well as specialists with the Forest Service that contributed to the agency's biological assessment. The Benchmark, Whitecap and Backwoods Thin sales have different supporting biological opinions and biological assessments. No doubt following discovery we will learn of other witnesses having knowledge regarding actions taken in these sales, particularly regarding the biological opinions. However, to conclude that may of the same witnesses and documents in this action will mirror that of Benchmark and Whitecap is contrary to the facts known and disclosed today.

CONCLUSION

For these reasons, defendant respectfully requests that plaintiff's suggestion to consolidate be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

OF COUNSEL:
MARCUS R. WAH
Associate Regional Attorney
USDA-OGC, Pacific Region

s/Lindsay E. Williams
LINDSAY E. WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 353-7995
Fax: (202) 514-8624

August 8, 2005

Attorneys for Defendant