**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| SCOTT TIMBER CO., Plaintiff, v. THE UNITED STATES, Defendant. | No. 05-604C (Judge Horn) |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER AND SUGGESTION OF CONSOLIDATION**

Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Counsel for Plaintiff

OF COUNSEL:

Ruth G. Tiger
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

Dated: August 22, 2005

## TABLE OF CONTENTS

**PAGE**


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. This Case Shares Substantial Overlapping Issues Of Fact And Law With The Swanson Group Cases Which Justify Management By A Single Judge ........ 2

A. The Shared Key Common Facts Between The Instant Case And The Swanson Group Cases Outweigh Any Factual Differences And Indicate That Case Management By A Single Judge Would Best Promote The Administration Of Justice In All Three Cases ........ 3

B. The Common Legal Issues Shared By The Instant Case And The Swanson Group Cases Justify Transfer And Case Management By A Single Judge ........ 7

II. The Cases Cited By Defendant Indicate That Cases Involving Overlapping Common Issues Of Fact And Law Are Best Managed By A Single Judge ........ 11

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**CASES** **PAGE**

A-1 Cigarette Vending, Inc. v. United States,
40 Fed. Cl. 643 (1998) ........................................ 12-13

Boston Edison Co. v. United States,
Nos. 99-447C, 03-2626C, 2005 WL 1793410 (Fed. Cl. July 29, 2005)..........10, 12

Cienega Gardens v. United States,
62 Fed. Cl. 28 (2004) ........................................12

H.N. Wood Products, Inc. v. United States,
59 Fed. Cl. 479 (2003) ........................................ 7-8

In re Repetitive Stress Injury Litigation,
11 F.3d 368 (2nd Cir. 1993)........................................12

Oregon Natural Resources Council Action v. United States Forest Service,
59 F. Supp.2d 1085 (W.D. Wash. 1999)........................................2

Pacific Coast Federation of Fisherman's Association v. NMFS,
No. 00-1757R (W.D. Wash. Dec. 7, 2000)........................................11

Precision Pine & Timber, Inc. v. United States,
50 Fed. Cl. 35 (2001) ........................................5, 8

Scott Timber Co. v. United States,
333 F.3d 1358 (Fed. Cir. 2003)........................................7, 8, 9

**STATUTES AND REGULATIONS**

FRCP 42(a) ........................................1

RCFC 20 ........................................2

RCFC 40.1(b)........................................10, 11, 12, 13

RCFC 40.2 ........................................1

RCFC 40.2(b)(1) ........................................1

RCFC 42(a)........................................1, 11

**INTRODUCTION**

Plaintiff has moved to transfer this case (with a suggestion of consolidation) in order to promote judicial economy, ensure consistent application of the law, and avoid unnecessary costs and duplication of effort. See Plaintiff's Motion to Transfer and Suggestion of Consolidation at 1 [hereinafter "Pl. Motion"]. Accordingly, the issue before this Court is whether these goals are best served if a single judge coordinates and manages three indirectly-related cases, Swanson Group, Inc. v. United States, CoFC No. 05-170C, Swanson Group, Inc. v. United States, CoFC No. 171C [hereinafter collectively the "Swanson Group" cases], and the instant case.

Whether it is also appropriate to consolidate the instant case with the Swanson Group cases, in whole or in part, is a matter which need be addressed by Judge Smith only if the Court grants plaintiff's motion to transfer.[1] Defendant's opposition, however, argues exclusively against plaintiff's suggestion of consolidation. All of the cases which defendant cites deal only with consolidation under RCFC 42(a) and FRCP 42(a), with the exception of one case which

[1]RCFC 40.1(b) authorizes a motion to transfer "[t]o promote docket efficiency, to conform to the requirements of any case management plan, or for the efficient administration of justice. . . ." RCFC 40.1(b) references RCFC 40.2 which, with respect to indirectly-related cases, states that "[w]henever it appears to a party that there are two or more cases before the court that present common issues of fact and that transfer, consolidation, or the adoption of a coordinated discovery schedule would significantly promote the administration of justice, the party may file a Notice of Indirectly-Related Cases." RCFC 40.2(b)(1). Plaintiff filed a Notice of Indirectly-Related Cases in the Swanson Group cases on June 7, 2005. Plaintiff filed its Motion to Transfer and Suggestion of Consolidation in the instant case on July 15, 2005. Plaintiff's invocation in that motion of RCFC 42(a) concerning the Court's authority to order cases to be consolidated as the basis for its motion was incorrect. Plaintiff's motion to transfer is pursuant to RCFC 40.1(b).

deals with joinder under RCFC 20.[2] Indeed, defendant concludes its opposition by asking the Court only to deny plaintiff's suggestion to consolidate. Def. Opp. at 10.

## I. This Case Shares Substantial Overlapping Issues Of Fact And Law With The Swanson Group Cases Which Justify Management By A Single Judge

Defendant agrees that "each of the sales at issue in [the Swanson Group cases and the instant case] was suspended as a result of the PCFFA litigation." Def. Opp. at 4. Defendant does not deny that the Swanson Group cases and the instant case involve the same standard Forest Service timber sale contract, containing identical or substantially the same relevant clauses. Defendant also does not deny that all three cases involve the same defendant, the United Forest Service, and that all three cases arose from timber sale contracts on the Siskiyou and Umpqua National Forests, neighboring forests in southern Oregon within the Pacific Northwest Region of the Forest Service, also known as Region 6. See Forest Service map attached as Exhibit 1. Defendant does not deny that the Regional Forester responsible for all three sales was the same at all relevant times. Defendant does not deny that the sales in each of these cases are subject to the same requirements of the Northwest Forest Plan Aquatic Conservation Strategy ("ACS"). It is also undisputed that plaintiffs' counsel of record, defendant's counsel of record and agency counsel are the same in all three cases. This overlap indicates that there would be

[2]Defendant also cites an order denying a motion to transfer and consolidate in Swanson Group, Inc. v. United States, No. 05-179C, in support of its opposition to plaintiff's motion in this case. Defendant's Opposition to Plaintiff's Motion to Transfer and Suggestion of Consolidation at 3 [hereinafter "Def. Opp."]. Although Case No. 05-179C involves the same plaintiff as in the Swanson Group cases, that case is not indirectly-related to the two Swanson Group cases that are the subject of this motion and should not be confused with them. Case No. 05-179C deals with matters arising out of Oregon Natural Resources Council Action v. United States Forest Service, 59 F. Supp.2d 1085 (W.D. Wash. 1999), and does not involve the PCFFA litigation at issue in this case.

significant savings to the parties and better use of scarce judicial resources if all three cases were managed by a single judge. Nonetheless, defendant apparently argues that transfer of this case is not appropriate. For the reasons set forth below, there are substantial overlapping facts and legal issues which justify granting plaintiff's motion to transfer.

### A. The Shared Key Common Facts Between The Instant Case And The Swanson Group Cases Outweigh Any Factual Differences And Indicate That Case Management By A Single Judge Would Best Promote The Administration Of Justice In All Three Cases

Although defendant admits that the suspensions of all three timber sales at issue in this case and in the Swanson Group cases occurred as a result of the PCFFA litigation, defendant contends that the different biological opinions and allegedly different actions by the Forest Service concerning each sale indicate that consolidation of the instant case with the Swanson Group cases (and by implication the transfer of this case for management by a single judge) is inappropriate. In support of its position defendant relies heavily on the final decision of the contracting officer in response to Scott Timber's claim which is attached as Exhibit 1 to defendant's opposition. However, contrary to defendant's arguments, the contracting officer's findings actually support plaintiff's motion to transfer.

In his final decision, the contracting officer determined that operations on the Backwoods Thin timber sale (the sale at issue in the instant case) were suspended "as directed by court order under" the PCFFA litigation and that the Backwoods Thin sale "was considered to be covered by the decision in this lawsuit as the Biological Opinion was nearly identical to the Biological Opinions listed in" the PCFFA litigation. Def. Ex. 1 at 2 (¶ 2(b)) (emphasis supplied).

Additionally, he observed that the Forest Service "suspended all operations on this sale as directed by court order under" the PCFFA litigation. Id. at 2 (¶ 2(d)). These findings demonstrate that the common cause of the suspensions in the instant case and in the Swanson Group cases was the PCFFA litigation. That litigation invalidated the biological opinions supporting the timber sales at issue in the Swanson Group cases and, according to the contracting officer, the biological opinion for the timber sale at issue in the instant case was "nearly identical" to those biological opinions. In these circumstances, the contracting officer concluded that the suspension of Scott Timber's Backwoods Thin sale was "directed by court order."

Defendant argues that because the sales at issue in the Swanson Group cases were suspended as a "direct result" of the PCFFA litigation and the sale at issue in this case was suspended as an "indirect result" of the PCFFA litigation, there is some sort of significant difference regarding the facts and legal issues giving rise to the claims. Def. Opp. at 4-5. Contrary to defendant's contention, because the Forest Service ordered the suspensions based on the same litigation, there are many more significant common factual and legal issues among these three cases than there are differences. That the biological opinions which are at the crux of the suspensions in all three cases are "nearly identical" militates strongly in favor of transfer and consideration of all three cases by a single judge.

Notwithstanding the findings of the contracting officer, defendant argues that a significant difference demonstrating that consolidation of the instant case with the Swanson Group cases (and by implication the transfer of this case) is inappropriate is the fact that the sales involved in the Swanson Group cases were suspended under paragraph (b) of standard contract

clause C6.01 which provides for the suspension of sales under certain circumstances in order "[t]o comply with a court order;" whereas, the sale at issue in the instant case was suspended pursuant to paragraph (c) of that standard contract clause which permits suspensions "[u]pon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale are the same as, or nearly the same as, conditions existing on sale(s) named in such an order as described in (b)." See id.; Exhibit 2 to Def. Opp. [hereinafter "Def. Ex."].[3] The distinction between a Forest Service suspension order invoking paragraph (b) of clause C6.01 and paragraph (c) of that same clause is not significant, especially in the circumstances of the PCFFA litigation.[4]

To begin with, a suspension under paragraph (c) of clause C6.01 requires a determination by the Regional Forester that "conditions existing on [the Backwoods Thin] sale are the same as, or nearly the same as, conditions existing on sale(s) named in such [a court] order as described in (b)." Def. Ex. 2 (emphasis supplied). In short, in the instant case the Regional Forester made a determination that the relevant conditions which justified suspending sale operations were "the

---

[3]Defendant's Exhibit 2 is a copy of standard Forest Service contract clause C6.01. The clause in the Backwoods Thin contract is standard Forest Service contract clause CT6.01. See Def. Ex. 1 at 2 (¶ 2(a)). A copy of clause CT6.01 from the Backwoods Thin contract is attached hereto as Exhibit 2. Clauses C6.01 and CT6.01 are substantively identical. The slight differences in the clauses are immaterial to the issues in this case. See, e.g., Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35, 40, 67 n.37 (2001). We refer in the text to Defendant's Exhibit 2 and to clause C6.01 to simplify our response to the arguments made by defendant.

[4]Defendant also argues that it is significant that the sales were on different forests and had different contracting officers. Def. Opp. at 8. However, the sales were all in the same Forest Service Region, the suspension of Backwoods Thin expressly required a determination by the Regional Forester, and the contracting officers for all three sales were subordinate to the same Regional Forester. Further, on information and belief, the suspensions of all three sales were made at the direction of the Regional Forester.

same as, or nearly the same as" the relevant conditions in the sales which the Forest Service suspended as a "direct result" of the PCFFA litigation, i.e., the Swanson Group cases. This determination, combined with the contracting officer's recognition that the biological opinion in the instant case was "nearly identical" to the biological opinions involved in the PCFFA litigation, Def. Ex. 1 at 2 (¶ 2(b)), demonstrate that there is substantial common ground regarding the suspensions the Forest Service imposed in the instant case and in the Swanson Group cases.

Defendant also argues that the Forest Service "employed a different process for analyzing the Backwoods Thin sale [at issue in this case] than it employed for the Benchmark and Whitecap sales [at issue in the Swanson Group cases]" and that "because these processes differ, the factual and legal issues involved necessarily differ." Def. Opp. at 6. However, neither the findings of the contracting officer on which defendant relies nor any statements in defendant's opposition indicate there was any significant difference in the Forest Service's analytical process. All that defendant states is that the Forest Service made a "No Affect" determination in its biological assessment supporting the sale at issue in this case prior to the PCFFA litigation, it reaffirmed this determination at some time after the March 31, 2003 withdrawal of the biological opinions implicated directly in the PCFFA litigation, it then determined it was able to move forward with the sale without having to submit the biological opinion to NMFS for approval, and it had to submit the biological opinions at issue in the Swanson Group cases to NMFS for approval before it could move forward with those sales. See Def. Opp. at 5-6. Defendant does not explain the significance of this distinction other than to assert that these actions affected the duration of the suspensions. This is not relevant to plaintiff's allegation that the Backwoods

Thin and the Swanson Group suspensions were all unreasonably caused by the same Forest Service errors.[5]

### B. The Common Legal Issues Shared By The Instant Case And The Swanson Group Cases Justify Transfer And Case Management By A Single Judge

Defendant argues that the common legal issues in the instant case and the Swanson Group cases "either require consideration of specific, differing facts or they have previously been considered by this Court and the United States Court of Appeals for the Federal Circuit, and thus, present no high risk of obtaining vastly inconsistent adjudications." Def. Opp. at 6. The Court should reject this argument because, as discussed above, the key facts relevant to liability, including "nearly identical" biological opinions, are essentially the same for all three cases, and it is the identity of the legal issues which overlap the Swanson Group cases and the instant case, not the novelty of those issues, which is relevant to a motion to transfer.

Defendant observes that the Federal Circuit and one judge of this Court have recognized that "the Government's failure to comply with statutory environmental requirements may qualify as a breach, but only if the Court concluded after consideration of other relevant facts that the Forest Service did not act reasonably in carrying out its obligations." Def. Opp. at 7, citing Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003); H.N. Wood Products v. United

[5]Moreover, any actions taken by the Forest Service as late as March 2003 do not appear to be directly relevant to plaintiff's claim in the instant case which focuses on the time period prior to 2003. Likewise, it is of little or no significance to the issue of transfer that the Forest Service lifted the suspension temporarily between October 2, 2001 and January 17, 2002. See Def. Opp. at 8-9. Most of this time period is outside the Normal Operating Season and weather would not permit Scott Timber to conduct sale operations. If relevant at all, the Forest Service's temporary lifting of the suspension pertains only to the issue of damages.

States, 59 Fed. Cl. 479 (2003). While it is true that these two cases recognize that the Forest Service may be found liable for a breach of its duties to cooperate and not to hinder if it fails to comply with statutory environmental requirements prior to award, neither Scott Timber nor H.N. Wood Products has any bearing on whether or not transfer and case management by a single judge is appropriate for the instant case and the Swanson Group cases.[6] There was no issue of transfer or consolidation raised or discussed in either of these two cases. In the instant case and the Swanson Group cases, as previously demonstrated, the key biological opinions are "nearly identical" and both were invalidated for the same reasons stated in the PCFFA litigation.

Defendant makes a similar argument with respect to the second common legal issue identified by plaintiff, the Forest Service's alleged breach of a warranty under standard clause C6.25. According to defendant, Scott Timber found that "even if contract clause [C]6.25 could be found to create an express warranty, Scott Timber could not reasonably rely upon the language as creating a warranty." Def. Opp. at 7, citing 333 F.3d at 1371. Defendant has misconstrued the holding of Scott Timber with respect to the application of clause C6.25 in that case and has misleadingly implied that Scott Timber could not reasonably rely upon clause

[6]In Scott Timber, the issue before the Court of Appeals was whether summary judgment in favor of the government was appropriate with respect to the reasonableness of the duration of a suspension which the Forest Service had imposed in order to consult under the Endangered Species Act. 333 F.3d at 1369. In this context the Federal Circuit found that the issue of reasonableness was intensely factual and summary judgment for the government was reversed and the matter remanded for trial. Id. at 1369-70. Further, as a matter of background, defendant does even mention an important case involving the Forest Service's breach of its duties to cooperate and not to hinder a timber sale purchaser's operations. Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001) (granting summary judgment on liability to a Forest Service timber sale purchaser which alleged that it was wrongly suspended after contract award in order for the Forest Service to comply with statutory environmental requirements which the Forest Service should have complied with prior to contract award).

C6.25 in creating a warranty in the instant case. Def. Opp. at 7. In Scott Timber, the Forest Service was deemed to have complied with certain environmental statutory obligations due to special legislation not at issue in the instant case. See 333 F.3d at 1360-61. In that circumstance, the Federal Circuit concluded that Scott Timber could not reasonably rely on any warranty in C6.25. Id. at 1370-71. In the instant case and the Swanson Group cases, the Forest Service was not deemed to have complied with applicable environmental requirements by virtue of special legislation or otherwise.

The third common legal issue identified by plaintiff which defendant contends does not justify consolidation (or by implication transfer of this case) is plaintiff's allegation that the Forest Service suspended it for an unreasonable amount of time. This allegation is also made in the Swanson Group cases. It is true that the time periods for the suspensions vary in each case and there are likely some different facts relating to each of these allegations. Nevertheless, the difference in the length of the suspensions and the factual circumstances surrounding the duration of each suspension does not outweigh the importance of the "nearly identical" biological opinions and "the same" or "nearly the same" conditions that existed on all three sales at issue. See Def. Ex. 1 at 2 (¶ 2(b)); Def. Ex. 2 (C6.01(c)). In addition, defendant consented to the transfer and consolidation of Case No. 05-171C with Case No. 05-170C, where the duration of the suspensions differed. The Forest Service suspended the Benchmark sale at issue in Case No. 05-170C for six years and the Whitecap sale at issue in Case No. 05-171C for three years. Def. Opp. at 9. The difference in the length of each suspension is not a meaningful justification for denying plaintiff's motion to transfer.

Plaintiff believes that the differences in the duration of the suspensions and the factual issues pertaining thereto can be tried separately, if deemed appropriate by the Court. However, because of the commonality of the facts and law giving rise to the suspensions, this decision can best be made by a single judge overseeing the discovery and fact development in all three cases as these cases progress. If the issues as to the duration of the suspensions are as common as the issues relating to the cause of the suspensions, then the issue of duration for each timber sale suspension may be most efficiently handled in a single trial. On the other hand, if the facts indicate that separate trials or proceedings are appropriate, then a single judge managing these cases is in the best position to make that determination. Plaintiff's motion to transfer is therefore appropriate even if the Court ultimately determines that consolidation of all three cases in all aspects is not warranted. See, e.g., Boston Edison Co. v. United States, Nos. 99-447C, 03-2626C, 2005 WL 1793410 (Fed. Cl. July 29, 2005).

There will of course be some individual differences between each of the three timber sales involved in the Swanson Group cases and the instant case, in particular regarding the question of damages. However, the fact that each of these cases does not present identical facts is not a barrier to transfer pursuant to RCFC 40.1(b). No two cases are ever identical. The key consideration for this Court is whether the common legal issues combined with common factual issues are such that it is more efficient for the Court and the parties and better for the administration of justice to transfer this case. Plaintiff submits that the key consideration in this analysis centers on the "nearly identical" biological opinions involved in the three cases and the common application of the holdings in the PCFFA litigation which invalidated the biological opinions due to government fault. The type of errors which invalidated the biological opinions

in the PCFFA litigation were the same type of errors in the biological opinions prepared in support of the timber sales at issue in the Swanson Group cases and in this case.[7] This is what led the contracting officer to conclude that the sale at issue in this case was suspended because it "was considered to be covered by the decision in" the PCFFA litigation and was therefore effectively "directed by court order." Def. Ex. 1 at 2 (¶¶ 2(b), (d)).

## II. The Cases Cited By Defendant Indicate That Cases Involving Overlapping Common Issues Of Fact And Law Are Best Managed By A Single Judge

Although the cases cited by defendant all involve the standard of review for consolidation under RCFC 42(a), there appears to be a paucity of authority on the standard for transfer under RCFC 40.1(b). However, it is reasonable to conclude by comparing RCFC 42(a) and RCFC 40.1(b) that many, but perhaps not all, of the same criteria apply to both rules. As a general matter, granting a motion to transfer to facilitate case management by a single judge could lead to methods of case coordination significantly less all-embracing than complete consolidation, so it would seem logical to conclude that the criteria for granting a motion to transfer require less commonality of issues of law and fact than a motion to consolidate and that in deciding a motion to transfer the Court should place more emphasis on efficiency, the best use of scarce judicial

[7] Those errors include (1) the failure of the biological opinions to verify agency compliance with the ACS as opposed to merely assuming the timber sales met ACS objectives, (2) requiring meaningful compliance only on the watershed scale, rather than at the timber sale level, (3) the failure to evaluate short term degradation, (4) the failure to require strict compliance with ACS riparian reserve standards, and (5) the failure to incorporate watershed analyses consistent with the "best available science." See Pacific Coast Federation of Fisherman's Association v. NMFS, No. 00-1757R, slip op. at 4 and 7 (W.D. Wash. Dec. 7, 2000). The Court rejected the argument that differences in geographic regions and salmonid species were relevant and stated that the validity of the "decisionmaking process, not just the individual decisions themselves, are at issue." Id. at 7. A copy of this opinion is attached for the Court's convenience as Exhibit 3.

resources, and the avoidance of unnecessary inconsistent decisions involving the same law and facts.

Many of the cases cited by defendant involve instances in which it appears that two or more cases proposed for consolidation were already assigned to a single judge. E.g., Boston Edison, supra; Cienega Gardens v. United States, 62 Fed. Cl. 28 (2004). Boston Edison and Cienega Gardens also demonstrate that the presiding judge may take action that involves forms of coordination or consolidation falling short of full consolidation. Case management by a single judge provides more flexibility as the cases move forward for coordination, consolidation or even for separate trials on one or more issues, if that seems the better course. Although it is true that in general the possibility of confusion and prejudice that may result from consolidation is a consideration for the Court, that factor should have relatively little weight in the instant situation where the issue before the Court is the appropriateness of transfer pursuant to RCFC 40.1(b) and all three cases will be tried by a judge and not a jury.

Finally, plaintiff recognizes that there are serious case management issues that can arise where a large number of cases are proposed for consolidation. Here, however, the proposed transfer would result in only three indirectly-related cases being managed by the same judge. Some of the cases cited by defendant involve a substantially larger number of cases proposed for consolidation and therefore significant issues of case management that simply are not present here. E.g., In re Repetitive Stress Injury Litigation, 11 F.3d 368, 371 (2nd Cir. 1993) (involving a motion to consolidate 44 cases); A-1 Cigarette Vending, Inc. v. United States, 40 Fed. Cl. 643,

644 (1998) (no motion to consolidate, but a motion to amend a complaint to join an additional 141 plaintiffs denied on case management grounds).

**CONCLUSION**

For each of the foregoing reasons and those stated in the Motion to Transfer and Suggestion of Consolidation, plaintiff submits that there is an overlap of significant legal and factual issues between the instant case and the Swanson Group cases which justifies transfer pursuant to RCFC 40.1(b). Plaintiff respectfully requests that the Court grant its motion to transfer.

Respectfully submitted,

s/Gary G. Stevens
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C. 20006
(202) 452-2140

OF COUNSEL:

Ruth G. Tiger
SALTMAN & STEVENS, P.C.
1801 K Street, N.W.
Suite M-110
Washington, D.C 20006
(202) 452-2140

Dated: August 22, 2005