
Prepared by the Geospatial Service and Technology Center, Salt Lake City, Utah. Map features generalized from 1: 2,000,000 U.S. Geological Survey and USDA Forest Service digital data. Review by Washington Office—Office of Communication.
NOTE: One or more national forests, grasslands, or other divisions portrayed on this map may be managed under a joint administrative unit.
Regional Boundaries
National Grasslands
National Forests
Regional Headquarters
Forest and Range Experiment Station Headquarters
Forest Products Laboratory
State and Private Forestry Area Headquarters (In other regions these activities are directed from regional headquarters)
PACIFIC NORTHWEST
NORTHERN
INTERMOUNTAIN
ROCKY MOUNTAIN
SOUTHWESTERN
PACIFIC SOUTHWEST
SOUTHERN
EASTERN
ALASKA
HAWAII
PUERTO RICO

EXHIBIT 1

CT6.0 - OPERATIONS. (6/90) Purchaser agrees to conduct its operations under this contract and other related business activities in compliance with Federal, State, and local statutes, standards, orders, permits, or other regulations.

State and local environmental quality laws must be applicable to National Forest System lands. The contract shall govern if such laws conflict with or preclude performance of contractual requirements.

A conviction of, or a civil judgment for, any of the following offenses, shall be considered a breach of this provision and may result in termination of this contract pursuant to CT9.3:

(a) Theft, forgery, bribery, embezzlement, falsification or destruction of records, making false statements, or receiving stolen property, that is in any way connected with obtaining, attempting to obtain, selling, trading, or processing public timber.

(b) Fraud, criminal offenses, or violation of Federal or State antitrust laws, any of which occurred in connection with obtaining, attempting to obtain, or performing a public contract or subcontract;

(c) Threatening, resisting, intimidating, or interfering with Forest Officers engaged in, or on account of, the performance of their official duties involving the protection, improvement, or administration of National Forest System lands.

CT6.01 - INTERRUPTION OR DELAY OF OPERATIONS. (10/96) Purchaser agrees to interrupt or delay operations under this contract, in whole or in part, upon the written request of Contracting Officer:

(a) To prevent serious environmental degradation or resource damage that may require contract modification under CT8.3 or termination pursuant to CT8.2;

(b) To comply with a court order, issued by a court of competent jurisdiction; or

(c) Upon determination of the appropriate Regional Forester, Forest Service, that conditions existing on this sale are the same as, or nearly the same as, conditions existing on sale(s) named in such an order as described in (b).

Purchaser agrees that in event of interruption or delay of operations under this provision, that its sole and exclusive remedy shall be (i) Contract Term Adjustment pursuant to BT8.21, or (ii) when such an interruption or delay exceeds 30 days during Normal Operating Season, Contract Term Adjustment pursuant to BT8.21, plus out-of-pocket expenses incurred as a direct result of interruption or delay of operations under this provision. Out-of-pocket expenses do not include lost profits, attorney's fees, replacement cost of timber, or any other anticipatory losses suffered by Purchaser. Purchaser agrees to provide receipts or other documentation to the Contracting Officer which clearly identify and verify actual expenditures.

**EXHIBIT 2**

IM00976555273.13544 (1696x2198x2 tiff)

FILED ENTERED
LODGED RECEIVED
DEC 07 2000
12/8/00
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; INSTITUTE FOR FISHERIES RESOURCES; OREGON NATURAL RESOURCES COUNCIL; and UMPQUA WATERSHEDS, INC.,<br>Plaintifffs,<br>v.<br>NATIONAL MARINE FISHERIES SERVICE,<br>Defendant,<br>and<br>AMERICAN FOREST RESOURCE COUNCIL,<br>Defendant-Intervenor. | NO. C00-1757R<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANT'S REQUEST FOR STAY |

THIS MATTER comes before the court on a motion by plaintiffs Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, Oregon Natural Resources Council, and Umpqua Watersheds, Inc. (hereinafter collectively "PCFFA" unless

individually identified) for preliminary injunction. PCFFA asks the court to direct defendant National Marine Fisheries Service (hereinafter "NMFS") to withdraw 20 biological opinions regarding timber sales in the Pacific Northwest, alleging that the biological opinions were improperly issued and therefore invalid. NMFS opposes PCFFA's motion, and has asked the court to stay the instant litigation pending the Ninth Circuit's ruling on a closely related case. Having reviewed the pleadings filed in support of and in opposition to the motion, together with the relevant files, and being fully advised, the court finds and rules as follows:

## I. BACKGROUND

This is the third chapter in an ongoing saga surrounding NMFS' consultation process with respect to the Northwest Forest Plan (hereinafter "NFP"), a comprehensive management strategy designed to deal with spotted owl habitat in the northwest's old-growth forests.[1] A component of the NFP is the Aquatic Conservation Strategy (hereinafter "ACS"), which is designed to address the health and habitat quality of salmonid species found within the forests covered by the NFP. The ACS has four essential compo-

[1] The complete factual, legislative, and procedural background relevant to this case is fully set out in the court's Order Granting Plaintiff's Motion for Summary Judgment, published at 71 F. Supp.2d 1063 (W.D. Wa. 1999), and will not be repeated here. The court reports herein only those facts necessary to understand its ruling.

IM00976555273.13544 (1696x2198x2 tiff) [3]

nents: 1) riparian buffers, or land reserves along streams subject to special management standards; 2) designation of key watersheds, sources of high quality water for at-risk fish species; 3) watershed analysis procedures to guide planning, monitoring, and restoration programs; and 4) long-term watershed restoration programs to improve the health of aquatic ecosystems. Record of Decision for Amendments to Forest Service and Bureau of Land Management Planning Documents, Exh. U to Hasselman Decl. at B-12. On March 18, 1997, NMFS promulgated a biological opinion on the NFP (the "NFP Biological Opinion") aimed at complying with the standards and guidelines laid down in the ACS, which provides in pertinent part that:

> (1) essential components of the . . . ACS objectives, watershed analysis, restoration, land allocations, and standards and guidelines, will be fully applied at the four spatial scales of implementation (region, province, watershed, and site or project); (2) management actions will comply with all applicable land allocations and standards and guidelines; and (3) management actions will promote attainment of the ACS objectives.

See NFP Biological Opinion, Exh. V to Hasselman Decl. at 38. A given project will be found not to jeopardize a listed species if these criteria are met, as NMFS recognized that a "pivotal issue in applying these criteria is determining whether proposed actions are properly designed and mitigated to ensure full attainment of ACS objectives." Id.

This court upheld the validity of the NFP Biological Opinion



AO 72
(Rev.8/82)

IM00976555273.13544 (1696x2198x2 tiff) [4]

in a previous litigation between these same parties, and found in it an obligation that individual projects undertaken under the NFP must be tailored to meet the ACS objectives. See PCFFA v. NMFS, No. 97-775R (PCFFA I) (finding, in addition, NMFS' assumption that associated government agencies, in particular the Bureau of Land Management and United States Forest Service, would act in accordance with the ACS justified). In that same opinion, the court invalidated two site specific biological opinions because they did not adequately address site specific compliance with ACS standards.

The court had occasion to address four more NMFS biological opinions, issued with respect to the Umpqua Basin and the resident cutthroat trout and Oregon coastal coho, in PCFFA v. NMFS, 71 F. Supp.2d 1063 (W.D. Wa. 1999) (PCFFA II). There, the court determined that NMFS had erred during its consultation process by 1) measuring ACS compliance only on the watershed scale, rather than at the site-specific level; 2) failing to consider short-term impacts in its jeopardy determinations; and 3) failing to insist on strict compliance with ACS riparian reserve standards. Moreover, by failing to fully incorporate the recommendations contained in its expert panel's watershed analyses, NMFS was found to have violated the best scientific information rule of the Endangered Species Act ("ESA"), 16 U.S.C. §1536. See generally PCFFA II, 71 F. Supp.2d at 1068-73. This failure "has virtually guaran-



AO 72
(Rev 8/82)

IM00976555273.13544 (1696x2198x2 tiff) [5]

teed that no timber sale will ever be found to jeopardize the continued existence of the [listed species]." Id. at 1073. The court concluded that, "[b]y employing a long term/watershed approach in making jeopardy determinations [and] . . . failing to require the action agencies to rely on and adequately incorporate watershed analysis into their biological opinions," NMFS had acted in an arbitrary and capricious manner under the Administrative Procedures Act, 5 U.S.C. §706. Id. NMFS' appeal from that decision is currently pending before the Ninth Circuit Court of Appeals.

NMFS issued the 20 biological opinions challenged in the instant suit following the same consultation guidelines invalidated by the court in PCFFA II. PCFFA, after unsuccessful attempts to deal with NMFS directly, brought this motion for a preliminary injunction preventing NMFS from acting on the biological opinions pending the Ninth Circuit's ruling on the appeal in PCFFA II and NMFS's compliance therewith. NMFS agrees that the issues in this case will be resolved by the Ninth Circuit's ruling, but has requested that the court stay this litigation until that resolution is handed down.

## II. DISCUSSION

### A. Preliminary Injunction Standard

The traditional test for a preliminary injunction requires



AO 72
(Rev 8/82)

the moving party to show either 1) a combination of likely success on the merits and the possibility of irreparable injury; or 2) that serious questions as to the merits are raised and that the balance of hardships tips sharply in the moving party's favor. Sierra Club v. Marsh, 816 F.2d 1376 (9th Cir. 1987). Under this scheme, the requisite likelihood of success on the merits that must be demonstrated is inversely proportional to the requisite degree of irreparable injury. See Dr. Suess Enterprises, L.P v. Penguin Books USA, Inc., 109 F.3d 1394, 1396 (9th Cir. 1997). An additional consideration is whether the public interest favors the injunction sought. Caribbean Marine Servs. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). A plaintiff presenting claims under the ESA has a reduced burden of showing harm and that the public interest favors the injunction, because the ESA evidences congress's intent that the balance of hardships and the public interest normally tip sharply in favor of the endangered species. See Tennessee Valley Authority v. Hill, 437 U.S. 153, 193-94 (1978); National Wildlife Federation v. Burlington Northern R.R., Inc., 23 F.3d 1508, 1510-11 (9th Cir. 1994). Nevertheless, some showing of harm is still necessary in an ESA case. National Wildlife Federation, 23 F.3d at 1510.

B. Likelihood of Success on the Merits

PCFFA argues that the 20 biological opinions it is currently challenging were issued according to the same consultation guide-



AO 72
(Rev 8/82)

lines which this court found arbitrary and capricious in PCFFA II, thus evidencing a strong likelihood of success on the merits of its case. NMFS does not dispute that characterization, but seeks to distinguish this case from PCFFA II on the grounds that different geographic regions and salmonid species are at issue here. That distinction is meaningless where, as here, the validity of NMFS' decision making processes, not just the individual decisions themselves, are at issue.

Furthermore, NMFS' opposition to PCFFA's motion for preliminary injunction is dedicated to convincing the court that its prior ruling is incorrect. Predictably, the court disagrees. There is no dispute that, in the instant opinions, NMFS has again 1) failed to measure project impacts on the site specific scale, instead reviewing for compliance with ACS guidelines on a watershed level; 2) ignored short term effects that would not be measurable ten or more years after the action; 3) failed to fully implement applicable watershed analyses prepared by its own expert panel; and 4) not insisted on strict compliance with ACS riparian reserve standards without justifying its departure. These actions were held to violate the APA and ESA in PCFFA II. NMFS has made no showing that the court's prior ruling is in error, or that these opinions are somehow not governed by the ruling in PCFFA II. The court therefore finds that PCFFA's likelihood of success on the merits of the instant case is exceedingly strong.

C. Harm

PCFFA claims irreparable harm exists in that NMFS cannot ensure that listed species will not be jeopardized by the projects subject to the biological opinions in dispute because the consultation process itself is flawed. Relying on Thomas v. Peterson, 753 F.2d 754 (9th Cir. 1985), PCFFA argues that, given "a substantial procedural violation of the ESA in connection with a federal project, the remedy must be an injunction of the project pending compliance with the ESA." See Thomas, 753 F.2d at 764.

NMFS responds that the requested injunction is unnecessary and improper because PCFFA has made no showing that the fish species of concern will actually suffer if an injunction is not issued. NMFS also appears to rely on the substantial inconvenience an injunction would work on third parties, and on the fact that an injunction would prevent a number of non-timber sale activities that had been approved in the subject biological opinions. These non-timber activities include road maintenance and decommissioning, erosion control projects and widespread trail upkeep. NMFS argues that an injunction preventing these non-timber activities would be more harmful than allowing action under the 20 biological opinions to proceed. On the basis of this purported favorable balance of harms, NMFS asks the court to stay this litigation and leave it free to act on the biological opinions until the Ninth Circuit rules on the PCFFA II appeal. NMFS's

IM00976555273.13544 (1696x2198x2 tiff) [9]

request for a stay thus presents essentially the same issue as PCFFA's request for an injunction.

While the court is mindful of the complications an injunction will likely work on NMFS's management activities, that inconvenience is not nearly sufficient to outweigh the immediate threat posed by biological opinions that were, most likely, improperly issued. There is a discrete and immediate harm posed to listed species by logging and timber activities undertaken pursuant to biological opinions that fail to properly assess the potential environmental harm associated with such forestry actions. NMFS cannot avoid the obligation to assess short term, site level impacts contained in the NFP Biological Opinion simply because it included detrimental and rehabilitative activities within a single biological opinion on an individual project.

In sum, the court finds that the possibility of irreparable harm exists on the facts of this case. Moreover, the balance of hardships, and certainly the public interest, tip sharply in favor of PCFFA in its attempt to enforce the provisions of the NFP and the ESA. Because more harm will flow from staying this action than will flow from staying NMFS's activity under the challenged biological opinions, NMFS is not entitled to a stay of this litigation.

/ / /

/ / /

III. CONCLUSION

For the foregoing reasons, the court finds that PCFFA is entitled to a preliminary injunction during the pendency of NMFS's case before the court of appeals. The court therefore enjoins NMFS from taking any action on the challenged opinions until the Ninth Circuit issues its mandate on the PCFFA II appeal. The injunction against NMFS shall remain in place until such time as NMFS is in compliance with the Ninth Circuit's decision. NMFS's motion for a stay pending the outcome of PCFFA II is DENIED.

DATED at Seattle, Washington this 7th day of December, 2000.

Barbara J Rothstein

BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE